**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **ARUN AGGARWAL, M.D.,** | : | Case No. 3:15-cv-00394-TMR |
| Plaintiff, | : | Judge Thomas M. Rose |
| | | Magistrate Michael R. Merz |
| v. | : | |
| | | **PLAINTIFF ARUN AGGARWAL,** |
| **WRIGHT STATE UNIVERSITY, et. al.,** | : | **M.D.'S FIRST AMENDED VERIFIED** |
| | | **COMPLAINT; JURY DEMAND** |
| Defendants. | : | **ENDORSED HEREON** |

Now comes the Plaintiff, Arun Aggarwal, M.D., by and through counsel, and for his First Amended Complaint against the Defendants sets forth as follows:

## JURISDICTION & VENUE

1.     This action was originally filed by the Plaintiff in the Montgomery County Court of Common Pleas, and the entire case and its causes of action were removed by the Defendants to this Court pursuant to 28 U.S.C. § 1441.

2.     The Plaintiff sets forth herein a claim pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, as amended, for the deprivation of the Plaintiff's property and liberty interests without procedural due process as guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. §§ 2201, and 2202.

3.     This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this District under 28 U.S.C. §1391(b) on the grounds that some or all of the conduct at issue took place in, and/or some or all of the Defendants reside in, the Southern District of Ohio.

1

## PARTIES

5.     The allegations contained in paragraphs 1-4 of this Complaint are incorporated as if restated herein.

6.     The Plaintiff Arun Aggarwal, M.D. ("Dr. Aggarwal") is a pediatric gastroenterologist, licensed to practice medicine in the State of Ohio. Dr. Aggarwal is employed as a fully-affiliated faculty member at the Wright State University Boonshoft School of Medicine and by Wright State Physicians, Inc., an affiliated entity through which the "practice plan" and clinical responsibilities of the Medical Faculty are implemented. Dr. Aggarwal was sponsored by Wright State University for an H-1B visa.

7.     The Defendant Wright State University ("WSU") is a public university that was created pursuant to Ohio Revised Code §3352.01 *et. seq.* and Ohio Revised Code §3345.01 *et. seq.*, and was chartered by the Ohio General Assembly in 1970. WSU's principal place of business is 3640 Colonel Glenn Highway, Dayton, Ohio 45435.

8.     The Defendant Wright State University Boonshoft School of Medicine ("BSOM") is a medical college established pursuant to Ohio Revised Code §3352.06, established by the Ohio General Assembly in 1973. BSOM is the medical college of Wright State University, and its principal place of business located at 3640 Colonel Glenn Highway, Dayton, Ohio. BSOM, through its officers, trustees, directors, employees, and agents, is vested with the authority to supervise, hire, retain, and terminate its employees and faculty members.

9.     The Defendant Wright State Physicians, Inc. ("WSP") is a non-profit Ohio corporation with its principal place of business located at 725 University Blvd., Fairborn, Ohio 45324. Upon information and belief, WSP is the entity and arm through which BSOM Faculty engage in clinical practice and implement BSOM's practice plan pursuant to BSOM's employment contracts; and/or by the conditions imposed upon BSOM by the Ohio Revised Code. See **Exhibit A**. WSP is the agent and/or alter ego of BSOM, and/or is a private corporation acting under the color of state law. WSP through its officers, trustees, directors, employees, and agents, is vested with the authority to supervise, hire, retain, and terminate its physician employees. At all times alleged in this Complaint, WSP was acting under color of state law.

10.    The Defendant Dr. Alan P. Marco, M.D., MMM is the President and CEO of WSP and also the Associate Dean for Clinical Affairs at the BSOM. He is named in this action for damages and declaratory relief individually. He is also named in this action for declaratory relief in both of his official capacities.

2

11. The Defendant Dr. Margaret M. Dunn, M.D., M.B.A., FACS, is the Dean of Wright State University's Boonshoft School of Medicine. She is also the former President and CEO of WSP who signed Dr. Aggarwal's Employment Contract on behalf of WSP while holding that position. She is named in this action for damages individually, and for injunctive and declaratory relief in both her official and individual capacities.

12. The Defendant Arthur S. Pickoff, M.D. was a Professor Emeritus in Pediatrics and Community Health at BSOM. Dr. Pickoff was also the signatory to an offer letter sent to Dr. Aggarwal in 2011 and at that time held the positions of Professor and Department Chair. He is named in this action for damages individually, and for injunctive and declaratory relief in both his official and individual capacities.

13. The Defendant Dr. Albert Painter, Psy.D, is the Associate Dean of Faculty Affairs at BSOM. He is named in this action for damages individually, and for injunctive and declaratory relief in both his official and individual capacities.

14. The named Defendants are "persons" subject to suit under 42 U.S.C. § 1983.

15. The named Defendants were acting under the color of state law at all pertinent times.

16. WSU, BSOM, Margaret Dunn, M.D., M.B.A., FACS, Arthur S. Pickoff, M.D., and Albert S. Painter, Psy.D are collectively referred to herein as the "WSU Defendants".

17. WSP and Allen P. Marco, M.D., MMM are collectively referred to herein as the "WSP Defendants".

## FACTS

18. The allegations contained in paragraphs 1-17 of this Complaint are incorporated as if restated herein.

19. The Plaintiff, Dr. Aggarwal, is a pediatric gastroenterologist who is licensed to practice medicine in the State of Ohio.

20. Dr. Aggarwal is a native of India.

21. Dr. Aggarwal originally came to the United States on a J1 Exchange Visitor Visa.

22. WSU sponsored Dr. Aggarwal's J1 Waiver and H-1B visa, permitting him to reside in the United States while working in his specialty occupation.

23. Dr. Aggarwal's spouse and children, including a special-needs child, reside with him in the Dayton, Ohio area.

24. On or about December 19, 2011, Arthur S. Pickoff, M.D. of BSOM offered Dr. Aggarwal employment as a fully-affiliated faculty member of BSOM. The offer letter outlined the terms and conditions of the employment offer. A true and accurate copy of the letter is attached hereto as **Exhibit A** ("the letter") and is incorporated herein by reference.

25. In pertinent part, the letter provided that Dr. Aggarwal would be employed as a fully affiliated faculty member from 2013 until 2016, and thereafter his position was annually renewable contingent on approval and funding.

26. The letter further stated that Dr. Aggarwal's faculty appointment was conditioned upon his ability to obtain and maintain: (1) a license to practice medicine in Ohio; (2) hospital staff privileges; and (3) professional liability insurance in the amount, manner, and rate conventional for the institution.

27. The letter also proposed employment with Wright State Physicians, Inc., the "practice plan for the School of Medicine faculty." The letter stated that a separate employment contract would follow that would govern Dr. Aggarwal's relationship with Wright State Physicians.

28. Dr. Aggarwal accepted the offer outlined in the letter and thereby became a fully affiliated faculty member of BSOM.

29. On July 3, 2012, Wright State Physicians, Inc. and Dr. Aggarwal entered into an Agreement entitled "Wright State Physicians Physician (Faculty) Employment Agreement Arun Aggarwal, M.D.," (the "Agreement") a true and accurate copy of which is attached hereto as **Exhibit B**, and is incorporated herein by reference.

30. The Agreement provided that Dr. Aggarwal's employment with Wright State Physicians, Inc. ("WSP") as a medical doctor and Physician was to begin on July 1, 2013.

31. Pursuant to the Agreement, Dr. Aggarwal was required to: (1) conduct his private practice of medicine through WSP; (2) maintain his Ohio medical license; (3) maintain medical staff privileges at such medical institution as required and abide by that institution's medical staff by laws; (4) keep and maintain adequate records of his performance and duties; and (5) do all things reasonably desirable to maintain and improve professional skills for the benefit of himself, WSP, and patients.

32. The Agreement provided that Dr. Aggarwal's employment would terminate upon the happening of any of the following events: (1) mutual agreement by the parties; or (2) upon 180 days' prior written notice by WSP or 90 days' notice by Dr. Aggarwal.

4

33. The Agreement further provided that Dr. Aggarwal's employment could be terminated immediately upon the occurrence of any of the following events: (1) Dr. Aggarwal's death; (2) Dr. Aggarwal's termination as a BSOM Faculty Member; (3) upon notice to WSP of Dr. Aggarwal's involuntary loss of medical staff privileges at a medical institution that he is required to perform assigned duties; or (4) Dr. Aggarwal's loss of his Ohio medical license.

34. On the face of the Agreement, Dr. Aggarwal's employment with WSP was to continue indefinitely absent termination for the enumerated reasons stated in the contract.

35. Dr. Aggarwal accepted the Agreement by signing and returning it to WSP. Margaret Dunn, M.D., MBA, the President and CEO of WSP at the time, signed the contract on WSP's behalf.

36. Both presently, and at the time Dr. Aggarwal entered into the aforementioned agreements with BSOM and WSP, WSU and/or BSOM had adopted by-laws, policies, and procedures, governing BSOM Faculty and Clinical Affairs personnel.

37. Pursuant to Article III, Section 4 of those by-laws, *"[r]egarding due process, these Bylaws supersede contracts with the University for employed faculty."* (emphasis added). A true and accurate copy of the by-laws is attached hereto as **Exhibit C** and is incorporated herein by reference.

38. Article III, Section 4 of the by-laws also provides that a faculty member shall only be removed or suspended during his or her period of appointment upon the following conditions: (a) demonstrated incompetence or dishonesty in teaching or scholarship; or (b) substantial and manifest neglect of duty; or (c) personal conduct which substantially impairs the individual's fulfillment of the individual's institutional responsibilities; or (d) malicious conduct which directly obstructs the performance of instructional or scholarly program authorized or permitted by the university. The by-laws further provide that "[t]he process of removal or suspension is defined in the appropriate current School of Medicine procedure."

39. BSOM's stated employment procedures outline the same four grounds for termination that are enumerated in the by-laws. A true and accurate copy of BSOM's procedures is attached hereto as **Exhibit D**, and is incorporated herein by reference.

40. Section 400 of BSOM's procedures outlines the process BSOM must follow when making decisions concerning the termination or suspension of a faculty member. It specifically provides for two levels of pre-termination hearings before a fully-affiliated f aculty member may be recommended for termination to the WSU Provost.

41.    As part of his relationship with BSOM and WSP, Dr. Aggarwal obtained privileges at Dayton Children's Hospital and engaged in pediatric clinical practice there.

42.    On or about November 2014, a patient filed a complaint with Dayton Children's Hospital alleging that Dr. Aggarwal touched the patient's chest inappropriately during an examination. Dr. Aggarwal denied these allegations.

43.    Dayton Children's Hospital convened an independent panel of practitioners to investigate the patient complaint. Upon information and belief, the panel found that Dr. Aggarwal's examination of the patient was medically appropriate.

44.    Ultimately, however, the aforementioned allegations led to an investigation by local law enforcement.

45.    In late summer 2015, Dr. Aggarwal was placed on paid administrative leave by Dayton Children's Hospital during the pendency of the outside investigation.

46.    Thereafter, Dr. Aggarwal's privileges temporarily lapsed.

47.    Dr. Alan P. Marco, M.D., MMM, President and CEO of WSP, sent a letter to Dr. Aggarwal dated September 8, 2015, stating that Dr. Aggarwal would need to provide documentation of current privileges at Dayton Children's Hospital on or before September 14, 2015, or he would be terminated from his employment as Assistant Professor of Pediatrics and his position with BSOM. A true and accurate copy of the foregoing letter is attached hereto as **Exhibit E**, and is incorporated herein by reference.

48.    Dr. Aggarwal received Dr. Marco's letter on September 15, 2015.

49.    On September 14, 2015, Dr. Albert F. Painter, Psy.D sent Dr. Aggarwal a letter via regular and certified mail to Dr. Aggarwal's home address that purported to terminate his BSOM employment effective that same date. The letter indicated that WSU would be notifying USCIS of his change in status. The letter cited a lack of privileges at Dayton Children's Hospital as the reason for the purported termination. Dr. Aggarwal received the letter after September 14, 2015. A true and accurate copy of the letter is attached hereto as **Exhibit F**, and is incorporated herein by reference.

50.    Dr. Aggarwal has since re-applied for renewal of privileges. The hospital's process for review and approval of his application is pending.

51.    Dr. Aggarwal was not provided with any sort of pre-termination hearing by WSU, BSOM, or WSP.

52.    On September 21, 2015, the undersigned counsel for Dr. Aggarwal wrote to Albert F. Painter, Psy.D, the Associate Dean for Faculty Affairs at BSOM, and informed him that Dr. Aggarwal was not afforded his due process rights, nor those rights afforded under the University's policies and procedures. The letter requested that BSOM and/or WSU hold Dr. Aggarwal's purported termination in abeyance, and noted that reporting a final employment decision to the United States Customs and Immigration Service ("USCIS") would be premature at that juncture. A true and accurate copy of the correspondence is attached hereto as **Exhibit G**.

53.    On September 28, 2015, counsel for Dr. Aggarwal received correspondence from the Assistant Section Chief of the Ohio Attorney General, Amy Nash Golian, who was serving as legal counsel for the University with respect to Dr. Aggarwal's purported termination. A true and accurate copy of the correspondence is attached hereto as **Exhibit H**, and is incorporated herein by reference. Attached to the correspondence was a courtesy copy of a letter from Dr. Painter. A true and accurate copy of that correspondence is attached hereto as **Exhibit I**, and is incorporated herein by reference.

54.    In her correspondence, Ms. Golian stated that it was the University's position that it was not premature to notify USCIS of a termination of employment because Dr. Aggarwal was not eligible to remain in his faculty position and therefore he could not remain on board as a University employee.

55.    In his correspondence, Dr. Painter acknowledged the applicability of BSOM's stated procedures, and determined that BSOM would convene a hearing board pursuant to BSOM's Procedure 620, and conduct a post-termination hearing.

56.    The BSOM procedures do not provide for a post-termination hearing process. Instead, the procedures clearly outline a two-level pre-termination review and recommendation process.

57.    On October 1, 2015, the undersigned counsel notified Ms. Golian that Dr. Aggarwal was being deprived of his property interest in continued employment without being afforded the due process rights guaranteed him by the United States Constitution, the Ohio Constitution, and WSU's own by-laws, policies, and procedures. Counsel again requested that Dr. Aggarwal's purported termination be rescinded, that the University report his continued employment to USCIS, and that he be afforded a pre-termination hearing and the requisite procedures outlined in the by-laws and BSOM Policies and Procedures. A true and accurate copy of this letter is attached hereto as **Exhibit J**, and is incorporated herein by reference.

58.    Hearing nothing from WSU or its counsel, on October 6, 2015, the undersigned again implored the University to refrain from its attempts to claim Dr. Aggarwal had been terminated and to notify USCIS of his continued employment with

BSOM and WSP. A true and accurate copy of the letter is attached hereto as **Exhibit K**, and is incorporated herein by reference.

59. On October 7, 2015, Ms. Golian again denied such requests for a reinstatement pending a pre-termination hearing. However, in this correspondence, WSU altered its position, stating that Dr. Aggarwal's failure to maintain medical privileges constituted "neglect of duty" under BSOM by-laws. A true and accurate copy of the letter is attached hereto as **Exhibit L**, and is incorporated herein by reference.

60. On October 12, 2015, the undersigned counsel provided Dr. Painter with the names of Dr. Aggarwal's nominees for the appeal board pursuant to Section 620 of BSOM procedures. Counsel noted that the names were provided under protest, because Dr. Aggarwal still maintains that he was not afforded the requisite due process. A true and accurate copy of the letter is attached hereto as **Exhibit M**, and is incorporated herein by reference.

61. On October 13, 2015, Ms. Golian acknowledged Dr. Painter's receipt of the undersigned counsel's letter, and stated that Dr. Painter was moving forward with convening what WSU considered as a post-termination hearing panel. A true and accurate copy of that e-mail is attached hereto as **Exhibit N**, and is incorporated herein by reference.

62. Thereafter, on October 20, 2015, Dr. Aggarwal filed this Complaint alleging violations of his procedural due process rights pursuant to 42 U.S.C. §§1983 and 1988, for injunctive and declaratory relief, and for state law breach of contract claims resulting from the University's failure to abide by the terms of its own contract(s), by-laws, policies, and procedures.

## CAUSES OF ACTION

### COUNT ONE
### Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988
### Deprivation of Property Interest without Due Process
### (Against All Defendants)

63. The allegations contained in paragraphs 1-62 of this Complaint are incorporated as if restated herein.

64. Dr. Aggarwal maintained a legitimate claim of entitlement and protected property interest in his continued employment with both BSOM and WSP, and maintained a protected liberty interest in his reputation, goodwill, and esteem within the medical professional community.

65. The Defendants purported to terminate Dr. Aggarwal's employment with BSOM and WSP without providing him any pre-termination notice or opportunity to be heard.

8

66.    The Defendants did so under the auspices that Dr. Aggarwal had violated the terms of his employment contracts because of the temporary lapse of his privileges at Dayton Children's Hospital. The Defendants also alleged, on an ad hoc and post hoc basis, that Dr. Aggarwal committed a gross and manifest negligent of his duties.

67.    All of the Defendants are state actors because they are either a public university which is an arm of the state, an affiliate of that university or its alter ego, a private corporation acting under color of state law, or are individuals who are agents, employees, and/or officers of WSU, BSOM, and/or WSP, and were acting in their official and individual capacities under the color of state law.

68.    Specifically, Doctors Alan Marco and Albert Painter have denied direct requests from Dr. Aggarwal for a pre-termination hearing, instead wrongfully maintaining that a termination has been effectuated and that a purported post-termination appeal process is adequate. Dr. Marco and Dr. Painter are both acting in their individual and official capacities under the color of state law.

69.    Likewise, WSU, BSOM, and WSP denied Dr. Aggarwal's requests for a pre-termination hearing by and through their legal counsel and agents.

70.    The Defendants' failure to provide any form of pre-termination notice and hearing violated Dr. Aggarwal's rights to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution.

71.    Dr. Aggarwal is entitled to damages as a result of the Defendants' acts and omissions.

72.    Dr. Aggarwal has suffered actual damages caused by the Defendants' deprivation of his property and liberty interests without due process.

73.    As a direct and proximate result of the Defendants' deprivation of his civil rights without due process, Dr. Aggarwal has suffered damages from the loss of being paid for his employment, damage to his reputation and esteem in the professional community, severe emotional distress, potential loss of his H-1B visa, potential loss of his wife's H1-B visa, deportation from the United States, a loss of accrued time on his J-1 Waiver requirement, and a loss of time towards his green card application and permanent residency status.

74.    The Plaintiff, pursuant to 42 U.S.C. 1983 and 1988, seeks monetary damages, reasonable costs and attorney's fees, declaratory judgment that the Defendants violated the Plaintiff's constitutional due process rights. The Plaintiff also seeks injunctive relief enjoining the WSU Defendants from the continued deprivation of a property interest without due process, and further enjoining the WSU Defendants from reporting misinformation regarding the Plaintiff's employment status to the USCIS.

## COUNT TWO
### Declaratory Judgment
### (Against All Defendants)

75. The allegations contained in paragraphs 1-74 of this Complaint are incorporated as if restated herein.

76. The contracts entered into by Dr. Aggarwal reference and incorporate BSOM's policies, procedures, and/or by-laws.

77. BSOM's by-laws expressly provide that, with respect to due process and termination, the by-laws supersede all faculty employment contracts with the BSOM.

78. The by-laws, policies, and procedures enumerate the sole reasons for which a faculty member may be terminated during his contract term or appointment.

79. Pursuant to state and federal law, the Plaintiff seeks a declaration of the parties' rights and responsibilities under the contracts, by-laws, policies, and procedures. The Plaintiff also seeks a declaration that the by-laws and/or policies supersede Dr. Aggarwal's employment agreements with respect to due process and termination for faculty members of BSOM and WSP.

## COUNT THREE
### Breach of Contract
### (Against WSU Defendants – BSOM Contract)

80. The allegations contained in paragraphs 1-79 of this Complaint are incorporated as if restated herein.

81. The WSU Defendants entered into an employment contract with Dr. Aggarwal on or about December 2011 that was for a term beginning in 2013 and ending in 2016.

82. Dr. Painter sent a letter purporting to terminate Dr. Aggarwal effective September 14, 2015 – before the end of the term of his contract.

83. The WSU Defendants thereby breached the contract with Dr. Aggarwal, as Dr. Aggarwal had performed under the contract.

84. The WSU Defendants also breached the contract with Dr. Aggarwal by failing to provide him the due process and protections afforded under the contract and/or BSOM's policies, procedures, and by-laws.

85. The WSU Defendants also breached the contract by claiming to terminate Dr. Aggarwal without demonstrating or citing a cause contained in Article 4, Section

III of the by-laws, and by failing to afford him the process outlined within Section 400 of BSOM Procedures.

86.     As a direct and proximate result of the breach, Dr. Aggarwal faces the threat of imminent and irreparable injury of: the loss of his H1-B visa; he and his wife being deported from the United States; the loss of time toward his green card application and permanent residency status in the United States; the loss of time on his J1 Waiver requirement, and the loss of esteem and reputation within the professional community.

87.     As such, Dr. Aggarwal seeks declaratory relief, injunctive relief as outlined herein. Dr. Aggarwal does not seek money damages for the breach of his BSOM contract.

**COUNT FOUR**
**Breach of Contract**
**(Against WSP Defendants – WSP Contract)**

88.     The allegations contained in paragraphs 1-87 of this Complaint are incorporated as if fully restated herein.

89.     Dr. Aggarwal entered into a contract with WSP on or about July 3, 2012, for employment that commenced on July 1, 2013.

90.     WSP is the agent, alter ego, and/or clinical arm of BSOM, or is a private corporation acting under the color of state law.

91.     The Agreement enumerated purported reasons for which Dr. Aggarwal could be terminated.

92.     Dr. Marco sent a letter purporting to terminate Dr. Aggarwal effective September 14, 2015.

93.     In doing so, the WSP Defendants breached the Agreement because the Agreement was superseded by BSOM's by-laws, policies, and procedures with respect to due process and termination.

94.     Dr. Aggarwal had performed and stood ready, willing and able to perform on the date of his purported termination.

95. As a direct and proximate result of the breach, Dr. Aggarwal faces the threat of imminent and irreparable injury of: the loss of his H1-B visa; he and his wife being deported from the United States; the loss of time toward his green card application and permanent residency status in the United States; the loss of accrued time toward his J1 Waiver requirement; and the loss of esteem and reputation within the professional community.

96. As such, Dr. Aggarwal seeks declaratory relief as outlined herein. Dr. Aggarwal does not seek money damages for the breach of the WSP contract.

## COUNT 5
## Injunctive Relief – 42 U.S.C. 1983, 28 U.S.C. 2201 & 2202, Fed. R. Civ. P. 65
### (Against the WSU Defendants Only)

97. The allegations contained in paragraphs 1-96 of this Complaint are incorporated as if fully restated herein.

98. The WSU Defendants have deprived Dr. Aggarwal of his property interest in continued employment with the BSOM, and have deprived him of his liberty interest in his reputation, esteem, and goodwill in his chosen profession, without first providing him a pre-termination hearing.

99. The WSU Defendants, acting under the color of state law, instead wrongfully propose a post-termination hearing be convened.

100. In the interim, the WSU Defendants, acting under the color of state law, have reported to USCIS that Dr. Aggarwal is no longer employed with WSU, BSOM, and/or WSP.

101. Dr. Aggarwal's H-1B Visa is in real and immediate jeopardy.

102. Dr. Aggarwal and his wife face imminent deportation, and the loss of Dr. Aggarwal's H1-B status.

103. Dr. Aggarwal also potentially faces the loss of the time accrued time on his Green Card application, and potentially faces the loss of accrued time towards his J1 Waiver requirement.

104. The Court, pursuant to 42 U.S.C. § 1983, 28 §§ U.S.C. 2201 and 2202, and Federal Rule of Civil Procedure 65, should preliminarily enjoin the Defendants from attempting to hold a post-termination hearing and order that they hold the appropriate hearings to afford Dr. Aggarwal the requisite due process.

105.    The Court should also enjoin the WSU Defendants, acting under the color of state law, from reporting to USCIS any information that Dr. Aggarwal is presently terminated, and further order that the WSU Defendants notify USCIS that Dr. Aggarwal remains employed.

### COUNT 6
### Injunctive Relief - Contracts
### (Against WSU Defendants – BSOM Contract)

106.    The allegations contained in paragraphs 1-105 of this Complaint are incorporated as if restated herein.

107.    The WSU Defendants wrongfully attempted to terminate the BSOM contract with Dr. Aggarwal effective September 14, 2015.

108.    The WSU Defendants failed to provide Dr. Aggarwal with any of the due process or procedures afforded to him under BSOM's bylaws, policies, and procedures.

109.    This Court should enjoin the WSU Defendants from attempting to terminate Dr. Aggarwal's employment until they have afforded him the appropriate process under their bylaws, policies, and/or procedures.

110.    Dr. Aggarwal and his wife potentially face deportation, the loss of Dr. Aggarwal's H-1B status, and the loss of the time accrued on his H-1B via toward his green card, and the loss of his time accrued on his J-1 waiver requirement.

111.    Dr. Aggarwal also faces real and imminent harm to his reputation, esteem, and goodwill within the professional community.

112.    Such injuries are not compensable by damages, and injunctive relief is warranted.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Arun Aggarwal, M.D., requests judgment against the Defendants as follows:

A.    For all appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of the Defendants;

B.    For appropriate declaratory relief declaring the rights and obligations of the parties under the employment contracts, and BSOM's bylaws, policies, and procedures;

C.    For compensatory damages for the Defendants' violations of 42 U.S.C. 1983, in an amount to be determined at trial;

**D.** For all appropriate injunctive and equitable relief against the Defendants allowed by 42 U.S.C. § 1983, the Civil Rights Act of 1871, 28 §§ U.S.C. 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure, and by Ohio law for any contract claims. This includes the enjoining and permanently restraining these violations, and direction to the WSU Defendants to take such affirmative action as is necessary to ensure the effects of the unconstitutional and unlawful employment practices are eliminated and do not continue to affect the Plaintiff, including Plaintiff's status with the USCIS, or others. Also that the WSU Defendants be ordered to provide the due process, procedures, and policies listed within the BSOM bylaws, policies, and procedures, and employment contracts.

**E.** For an award of reasonable attorney's fees and costs on his behalf expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. 1988; and

**F.** For such other and further relief which the Plaintiff may show himself justly entitled, or that this Court may deem equitable or proper.

## JURY DEMAND

The Plaintiff hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ James P. Fleisher*
James P. Fleisher (0059509)
Curtis G. Moore (0091209)
BIESER, GREER & LANDIS, LLP
400 PNC Center
6 N. Main Street
Dayton, Ohio 45402-1908
Phone:   937) 223-3277
Fax:       937) 223-6339
Email:   jpf@bgllaw.com; cgm@bgllaw.com
*Attorneys for the Plaintiff, Arun Aggarwal, M.D.*

## VERIFICATION

I, Arun Aggarwal, M.D., state that the matters of fact set forth in this Verified Complaint are true and correct to the best of my knowledge, information and belief.

By: _____
Arun Aggarwal, M.D.

Sworn to before me by Arun Aggarwal, M.D. and subscribed in my presence this 13th day of November, 2015

_____
Notary Public

215194/515149

CURTIS G MOORE, Attorney at Law
Notary Public, State of Ohio
My Commission has no expiration date.
Section 147.03 O. R. C.

15